UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
JUL 06 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-431-GWU

MARSHA R. HURLEY,                         PLAINTIFF,

VS.        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,           DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a

2

Hurley

reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Hurley

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony

6

only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Marcia R. Hurley, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of diabetes, benign hypertension, and a history of cervical disc disease. (Tr. 17). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Hurley retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 18-21). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to "light" level exertion, and could only occasionally climb, stoop, or crawl. (Tr. 415). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 415-16).

On appeal, this Court must determine if the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

7

Mrs. Hurley alleged disability due to diabetes, high blood pressure, a ruptured disc, and back and arm pain. (Tr. 62). She testified at the administrative hearing that she had left her last job as a cook because of a herniated disc in the neck, which required surgery, and she would still experience pain two to four times a week. (Tr. 405). She could not lift more than 10 pounds. (Id.). She had also been diagnosed with diabetes in August, 1998, and was taking insulin. (Tr. 406). Her legs and arms would tingle, and she felt fatigued. (Tr. 406). Her family physician, Dr. Dennis Ulrich, was still adjusting her Insulin dosage to get the diabetes under better control. (Tr. 407). So far, her blood sugars were still running high, even though she followed a special diet. (Tr. 407-8). Dr. Ulrich also recently prescribed Wellbutrin for anxiety and depression, as well as high blood pressure and irritable bowel syndrome. (Tr. 413). The plaintiff did not allege any specific restrictions due to these problems.

Medical records in the transcript include office notes from Dr. William Brooks, a neurosurgeon, who saw the plaintiff beginning in late 2001 for complaints of neck pain radiating to the left arm. (Tr. 307). An MRI showed a herniated disc at C6-C7 on the left (Tr. 304), and after a trial of physical therapy, Dr. Brooks performed an anterior cervical discectomy with fusion at the C6-7 level on February 15, 2002 (Tr. 213-14). After several follow-up visits, Dr. Brooks released his patient to return to work on June 16, 2002 "without limitation or restriction." (Tr. 299).

8

Office notes from Dr. Ulrich, the family physician, from before the alleged onset date show that the plaintiff was treated for high blood pressure, which was controlled with medication, and for diabetes, initially with oral medication and then with Insulin. (E.g. Tr. 350-75). In 2002, Dr. Ulrich referred his patient to an endocrinologist whose examination showed that, despite blood sugar readings usually above 300, the plaintiff had intact sensation and no other obvious physical difficulties. (Tr. 310-14). In June, 2002, blood sugar readings were usually less than 150, and the physician decided to discontinue the use of insulin. (Tr. 327). However, Dr. Ulrich's notes indicate that he restarted insulin by July (Tr. 336, 338 ), and in September, 2002 referred to the plaintiff's blood sugar as "climbing completely out of control" (Tr. 334). He felt that she needed to return to the specialist, but no additional notes from the source were submitted.

Dr. Ulrich wrote a letter dated July 10, 2002 stating that Mrs. Hurley had been evaluated for "multiple complications of uncontrolled diabetes," and still did not have satisfactory control. (Tr. 333). He indicated that she had difficulty concentrating and also experienced episodes of profound weakness, although these problems are not mentioned in his office notes. (Id.). He felt that "she should be excused from work" until there were improvements in control. (Id.). In November, 2002, Dr. Ulrich completed a physical residual functional capacity assessment limiting the plaintiff to less than sedentary level lifting, and standing and walking less than two hours a day, with a need to alternate sitting and standing every five minutes and lie down every

10 to 15 minutes, in addition to having a number of other restrictions. (Tr. 389-91). He stated that restrictions on reaching, handling, and fingering were "limited by pain," but the other restrictions were supported only by "physical exam, interview." (Tr. 390). The ALJ rejected these restrictions as unsupported by specific findings.

The ALJ also rejected the findings and less onerous restrictions of a one-time examiner, Dr. Bobby J. Kidd, who examined the plaintiff in August, 2003. (Tr. 393). He apparently had access to some prior records, including a note from Dr. Brooks releasing Mrs. Hurley back to work with no restrictions, as well as physical therapy notes. (Tr. 393, 398). His examination showed few abnormalities, and included 20/30 vision in both eyes with glasses, a normal examination of the extremities, no sensory deficits, and no tenderness or spasm of the cervical spine, although hand grip was reduced below the level of a five-year-old child. (Tr. 394-6). Dr. Kidd felt that Mrs. Hurley could perform heavy level exertion and could frequently perform all postural activities and reach above shoulder level. (Tr. 397).

The ALJ chose to follow the functional restrictions given by two non-examining state agency physicians, who concluded that the plaintiff was capable of performing light level work, and occasionally climbing, stooping, and crawling. (Tr. 283-90, 293-7).

While the opinion of the treating physician is normally entitled to substantial deference, in the present case Dr. Ulrich provided little rationale for his extreme restrictions, other than indicating that pain would limit reaching, handling, and

10

fingering. He commented that the plaintiff would have extreme environmental restrictions because "no one, especially a sick person, should have the stress added from these environmental factors," (Tr. 391) which suggests that he would restrict anyone from working around cold, heat, witness, humidity, noise, fumes, and hazardous machinery. Therefore, a reasonable fact finder could have concluded that his restrictions were not based on objective factors. His earlier letter, which requests that the plaintiff should be excused from work until control of her diabetes was improved, implies that there would not be a permanent disability. (Tr. 333). While his office notes subsequently suggest that control was difficult to obtain, the records cover only a few months after the July, 2002 letter. No office notes after November 2002 were submitted, although the plaintiff's administrative hearing took place on December 17, 2003 and the ALJ did not issue her decision until March 24, 2004.

Even though the ALJ did not accept Dr. Kidd's functional capacity conclusions, she could have noted that his August 12, 2003 examination did not show any obvious problems such as diabetic retinopathy or loss of sensation, and Mrs. Hurley stated that she had not been hospitalized for any episode of hypoglycemia or hyperglycemia. (Tr. 393-6). Therefore, under the circumstances of this particular case, there is adequate evidence to discount the opinion of a treating physician. It could even be said that the ALJ gave the plaintiff the benefit

11

Hurley

of the doubt in accepting the more restrictive assessments of the state agency physicians rather than of an actual examiner, Dr. Kidd.

The decision will be affirmed.

This the ⟨6⟩ day of July, 2005.

G. WIX UNTHANK
SENIOR JUDGE